Police also told him that the homeless were not allowed in Lucas Park. During the summer of 2003, St. Louis Metropolitan Police stopped Purvey on numerous occasions to check his identification, but they never charged him with any violation or crime.

89.     On two occasions during the summer of 2003, St. Louis Metropolitan Police told Wendel Jones that he could not be in Lucas Park. Wendel Jones was not homeless, but the St. Louis Metropolitan Police believed him to be homeless because, after his work on the early shift, he often ate breakfast in Lucas Park and associated with some homeless individuals who frequent the Park. Wendel Jones was also stopped by St. Louis Metropolitan Police several times in the summer of 2003 to check his identification.

90.     On July 2, 2004, Larry B. Fryer observed St. Louis Metropolitan police officers pull up to the park near the downtown library main branch in a car and police wagon. He observed police arrest four men known to him to be homeless. Fryer feared arrest and left the area.

91.     Fryer is constantly approached by police, at least once or twice a week, and questioned without probable cause or reasonable suspicion. On several occasions, police officers have told him that if they see him downtown again, they would "lock him up."

92.     In the spring of 2004, Fryer was walking to the state employment office on Olive Street to get information about job opportunities. A police officer approached him and said he should leave downtown or be arrested. Fryer, fearing arrest, did not go to the employment office.

93.     Jerry Hastings was employed in St. Louis as a bricklayer. On or about Friday, July 9, 2004, at approximately 2:00 p.m., two white police officers arrested Hasting for allegedly

25

tampering with a car. When the police took his belt and other possessions, they also took his eyeglasses, and one officer intentionally snapped his glasses into pieces. Hastings was taken to the city jail, held for approximately 20 hours, and then released without being charged. The police returned his glasses to him, in pieces. Hastings could not afford new glasses. Without glasses, he was unable to perform his bricklaying work and lost his job.

94.     Hastings has been told by a female St. Louis Metropolitan Police officer that Laclede's Landing is "off limits" to him.

95.     Harold Brown, a homeless African-American man who uses social services in downtown St. Louis has been told by St. Louis Metropolitan Police that he cannot be in or walk downtown or in Lucas Park. He is frequently harassed by St. Louis Metropolitan Police and has had property taken by Police Officers, including his EBT (electronic benefits transfer card), a hat, toiletries, socks, and personal papers and a family photograph. On July 8 or 9, 2004, Mr. Brown was sitting in the park across from the Post Office on Market Street when a St. Louis Metropolitan Police officer on a bicycle approached him, demanded to and, without Brown's consent, did search his bag which only contained his lunch. The Police Officer also used a profanity in addressing Mr. Brown.

96.     Unless Defendants are immediately, preliminarily, and permanently enjoined from removing homeless and homeless-appearing people from downtown St. Louis and discouraging homeless people and homeless-appearing people from remaining in the area by taking Plaintiffs and other homeless and homeless-appearing people into custody and jailing them without reasonable suspicion, probable cause, or lawful authority; transporting such individuals away from certain areas of the City and abandoning them; unreasonably seizing and

26

destroying their personal property; directing them under threat of arrest to remove themselves from Lucas Park, Washington Avenue, Locust Street, Laclede's Landing and other downtown public areas when they are engaged in lawful activity, and subjecting them to forced labor before they have been found or pled guilty, Plaintiffs and other homeless and homeless-appearing people will continue to suffer irreparable harm, including violation of their constitutional rights, gross indignities, severe emotional and psychological distress, humiliation, embarrassment, anguish, and anxiety. There is no relief at law adequate to remedy the harms suffered by Plaintiffs and to prevent the continuing and repeated infliction of these harms.

## V.     CONSTITUTIONAL VIOLATIONS SUFFERED BY PLAINTIFFS

### SEIZURE OF PLAINTIFF JOHNSON AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER DRAGO COGNIZABLE UNDER 42 U.S.C. § 1983

97.     Officer Daniel Drago and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Johnson against his will and thereby caused a violation of Plaintiff Johnson's rights under the Fourth and Fourteenth Amendments.

98.     Officer Daniel Drago and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Johnson from talking with a friend and walking in a public place for lawful purposes and thereby caused a violation of Plaintiff

27

Johnson's substantive due process rights under the Fourteenth Amendment.

99.     The detention, continuing seizure, and arrest of Plaintiff Johnson were and are in violation of Plaintiff Johnson's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

100.     Interfering with and preventing Plaintiff Johnson from talking and walking with a friend in a public place for lawful purposes were and are in violation of Plaintiff Johnson's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

101.     As a direct and proximate result of the detention and physical restraint of Plaintiff Johnson and interference with his ability to engage in lawful activities in public places, Plaintiff Johnson suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

## SEIZURE OF PLAINTIFF TATE AND HIS PROPERTY AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS COGNIZABLE UNDER 42 U.S.C. § 1983

102.     St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained and physically restrained Plaintiff Tate against his will and transported him to and abandoned him in a desolate area of downtown St. Louis and thereby

caused a violation of Plaintiff Tate's rights under the Fourth and Fourteenth Amendments.

103.   St. Louis Metropolitan Police officers without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, seized and destroyed personal property of Plaintiff Tate and thereby caused a violation of Plaintiff Tate's rights under the Fourth and Fourteenth Amendments.

104.   St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Tate from playing music on the sidewalk pursuant to his lawfully issued permit and thereby caused a violation of Plaintiff Tate's substantive due process rights under the Fourteenth Amendment.

105.   The detention and continuing seizure of Plaintiff Tate were and are in violation of Plaintiff Tate's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

106.   The seizure and destruction of the personal property of Plaintiff Tate were and are in violation of Plaintiff Tate's right to be free from unreasonable seizure of his property secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

107.   Interfering with and preventing Plaintiff Tate from engaging in lawful activities in a public place were and are in violation of Plaintiff Tate's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

108.    As a direct and proximate result of the detention and physical restraint of Plaintiff Tate, destruction of his personal property, and interference with his ability to engage in lawful activities in public places, Plaintiff Tate suffered intimidation, humiliation, embarrassment, and emotional distress, the loss of his property, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

### SEIZURE OF PLAINTIFF BRINKMAN AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER COATS COGNIZABLE UNDER 42 U.S.C. § 1983

109.    Officer Lance Coats and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Brinkman against his will and thereby caused a violation of Plaintiff Brinkman's rights under the Fourth and Fourteenth Amendments.

110.    Officer Lance Coats and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Brinkman from waiting for the bus and walking on the sidewalk and thereby caused a violation of Plaintiff Brinkman's substantive due process rights under the Fourteenth Amendment.

111.    The detention and continuing seizure of Plaintiff Brinkman were and are in violation of Plaintiff Brinkman's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

30

112.    Interfering with and preventing Plaintiff Brinkman from engaging in lawful activities in a public place were and are in violation of Plaintiff Brinkman's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

113.    As a direct and proximate result of the detention and physical restraint of Plaintiff Brinkman and interference with his ability to engage in lawful activities in public places, Plaintiff Brinkman suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

## SEIZURE OF PLAINTIFF EDWARDS AND HIS PROPERTY AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS COGNIZABLE UNDER 42 U.S.C. § 1983

114.    St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Edwards against his will and thereby caused a violation of Plaintiff Edward's rights under the Fourth and Fourteenth Amendments.

115.    Officer Eddie Brown and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Edwards from being on the sidewalk and from selling *What's Up* magazine pursuant to his lawfully issued license or permit, and thereby caused a violation of Plaintiff Edwards' substantive due process

rights under the Fourteenth Amendment.

116.    The detention and continuing seizure of Plaintiff Edwards were and are in violation of Plaintiff Edwards' right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

117.    Interfering with and preventing Plaintiff Edwards from engaging in lawful activities in  a public place were and are in violation of Plaintiff Edwards' right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

118.    As a direct and proximate result of the detention and physical restraint of Plaintiff Edwards and interference with his ability to engage in lawful activities in public places, Plaintiff Edwards suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

## SEIZURE OF PLAINTIFF JACKSON AND HIS PROPERTY AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER NERVIANI COGNIZABLE UNDER 42 U.S.C. § 1983

119.    Officer David Nerviani and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Jackson against his will and thereby caused a violation of Plaintiff Jackson's rights under the Fourth and Fourteenth Amendments.

32

120.    St. Louis Metropolitan Police officers without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, seized and destroyed personal property of Plaintiff Jackson and thereby caused a violation of Plaintiff Jackson's rights under the Fourth and Fourteenth Amendments.

121.    Officer David Nerviani and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Jackson from eating in the park and thereby caused a violation of Plaintiff Jackson's substantive due process rights under the Fourteenth Amendment.

122.    The detention and continuing seizure of Plaintiff Jackson were and are in violation of Plaintiff Jackson's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

123.    The seizure and destruction of the personal property of Plaintiff Jackson were and are in violation of Plaintiff Jackson's right to be free from unreasonable seizure of his property secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

124.    Interfering with and preventing Plaintiff Jackson from engaging in lawful activities in a public place were and are in violation of Plaintiff Jackson's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

125.    As a direct and proximate result of the detention and physical restraint of Plaintiff

33

Jackson, destruction of his personal property, and interference with his ability to engage in lawful activities in public places, Plaintiff Jackson suffered intimidation, humiliation, embarrassment, loss of his property,and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

**SEIZURE OF PLAINTIFF TRAWICK AND INTERFERENCE WITH
HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES
IN VIOLATION OF FOURTEENTH AMENDMENT
BY OFFICER BONENBERGER COGNIZABLE UNDER 42 U.S.C. § 1983**

126.   Officer Bonenberger and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Trawick against his will and thereby caused a violation of Plaintiff Trawick's rights under the Fourth and Fourteenth Amendments.

127.   Officer Bonenberger, without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Trawick from sitting in Kiener Plaza and thereby caused a violation of Plaintiff Trawick's substantive due process rights under the Fourteenth Amendment.

128.   The detention and continuing seizure of Plaintiff Trawick were and are in violation of Plaintiff Trawick's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

129.   Interfering with and preventing Plaintiff Trawick from sitting in Kiener Plaza were and are in violation of Plaintiff Trawick's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to

34

the United States Constitution and protected under 42 U.S.C. § 1983.

130.    As a direct and proximate result of the interference with Plaintiff Trawick's ability to engage in lawful activities in public places, Plaintiff Trawick suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

## SEIZURE OF PLAINTIFF COLEMAN AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTEENTH AMENDMENT BY OFFICER NICHOLSON COGNIZABLE UNDER 42 U.S.C. § 1983

131.    Officer Nicholson and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Coleman against his will and thereby caused a violation of Plaintiff Coleman's rights under the Fourth and Fourteenth Amendments.

132.    Officer Nicholson, without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Coleman from sitting in Kiener Plaza and thereby caused a violation of Plaintiff Coleman's substantive due process rights under the Fourteenth Amendment.

133.    The detention and continuing seizure of Plaintiff Coleman were and are in violation of Plaintiff Coleman's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

134.    Interfering with and preventing Plaintiff Coleman from sitting in Kiener Plaza were and are in violation of Plaintiff Coleman's right to move, stay put, and engage in lawful

35

activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

135.    As a direct and proximate result of the interference with Plaintiff Coleman's ability to engage in lawful activities in public places, Plaintiff Coleman suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

**SEIZURE OF PLAINTIFF HENLEY AND HIS PROPERTY
AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC
PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH
AND FOURTEENTH AMENDMENTS BY OFFICER NERVIANI
COGNIZABLE UNDER 42 U.S.C. § 1983**

136.    Officer David Nerviani and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Henley against his will and thereby caused a violation of Plaintiff Henley's rights under the Fourth and Fourteenth Amendments.

137.    St. Louis Metropolitan Police officers without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, seized and destroyed personal property of Plaintiff Henley and thereby caused a violation of Plaintiff Henley's rights under the Fourth and Fourteenth Amendments.

138.    Officer Nerviani and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Henley from sitting and eating in Lucas Park and thereby caused a violation of Plaintiff

Henley's substantive due process rights under the Fourteenth Amendment.

139.    The detention and continuing seizure of Plaintiff Henley were and are in violation of Plaintiff Henley's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

140.    The seizure and destruction of the personal property of Plaintiff Henley were and are in violation of Plaintiff Henley's right to be free from unreasonable seizure of his property secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

141.    Interfering with and preventing Plaintiff Henley from engaging in lawful activities in a public place were and are in violation of Plaintiff Henley's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

142.    As a direct and proximate result of the detention and physical restraint of Plaintiff Henley, destruction of his personal property, and interference with his ability to engage in lawful activities in public places, Plaintiff Henley suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

## SEIZURE OF PLAINTIFF KITCHEN AND HIS PROPERTY AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER NERVIANI COGNIZABLE UNDER 42 U.S.C. § 1983

143.    Officer David Nerviani and, upon information and belief, other St. Louis

37

Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Kitchen against his will and thereby caused a violation of Plaintiff Kitchen's rights under the Fourth and Fourteenth Amendments.

144.    Officer Nerviani and other St. Louis Metropolitan Police officers without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, seized and destroyed personal property of Plaintiff Kitchen and thereby caused a violation of Plaintiff Kitchen's rights under the Fourth and Fourteenth Amendments.

145.    Officer Nerviani and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Kitchen from sitting and eating in a public outdoor mall area and thereby caused a violation of Plaintiff Kitchen's substantive due process rights under the Fourteenth Amendment.

146.    The detention and continuing seizure of Plaintiff Kitchen were and are in violation of Plaintiff Kitchen's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

147.    The seizure and destruction of the personal property of Plaintiff Kitchen were and are in violation of Plaintiff Kitchen's right to be free from unreasonable seizure of his property secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

148.    Interfering with and preventing Plaintiff Kitchen from engaging in lawful activities in a public place were and are in violation of Plaintiff Kitchen's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

149.    As a direct and proximate result of the detention and physical restraint of Plaintiff Kitchen, destruction of his personal property, interference with his ability to engage in lawful activities in public places, and interference with his ability to distribute and sell magazines, Plaintiff Kitchen suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

### SEIZURE OF PLAINTIFF WHITE AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTEENTH AMENDMENT BY OFFICER RUSSO COGNIZABLE UNDER 42 U.S.C. § 1983

150.    St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff White against his will and thereby caused a violation of Plaintiff White's rights under the Fourth and Fourteenth Amendments.

151.    Officer Russo and other St. Louis Metropolitan Police officers, without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff White from standing on the sidewalk outside the Marriott hotel in downtown St. Louis and thereby caused a violation of Plaintiff White's substantive due process rights under the Fourteenth Amendment.

152.    The detention and continuing seizure of Plaintiff White were and are in violation of Plaintiff White's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

153.    Interfering with and preventing Plaintiff White from standing on the sidewalk outside the Marriott hotel in downtown St. Louis were and are in violation of Plaintiff White's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

154.    As a direct and proximate result of the interference with Plaintiff White's ability to engage in lawful activities in public places, Plaintiff White suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

### SEIZURE OF PLAINTIFF HARRIS AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER COATS COGNIZABLE UNDER 42 U.S.C. § 1983

155.    Officer Lance Coats and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Harris against his will and thereby caused a violation of Plaintiff Harris' rights under the Fourth and Fourteenth Amendments.

156.    Defendant Lance Coats and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any

reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Harris from being on the sidewalk and thereby caused a violation of Plaintiff Harris' substantive due process rights under the Fourteenth Amendment.

157.    The detention and continuing seizure of Plaintiff Harris were and are in violation of Plaintiff Harris' right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

158.    Interfering with and preventing Plaintiff Harris from engaging in lawful activities in a public place were and are in violation of Plaintiff Harris' right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

159.    As a direct and proximate result of the detention and physical restraint of Plaintiff Harris and interference with his ability to engage in lawful activities in public places, Plaintiff Harris suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff Harris suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

### SEIZURE OF PLAINTIFF HOLBROOK AND INTERFERENCE WITH HER RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS BY OFFICER TAYLOR COGNIZABLE UNDER 42 U.S.C. § 1983

160.    Officer Latroy Taylor and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained,

41

physically restrained, and arrested Plaintiff Holbrook against her will and thereby caused a violation of Plaintiff Holbrook's rights under the Fourth and Fourteenth Amendments.

161. Officer Latroy Taylor and, upon information and belief, other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Holbrook from being on the sidewalk waiting for the outreach food van and thereby caused a violation of Plaintiff Holbrook's substantive due process rights under the Fourteenth Amendment.

162. The detention and continuing seizure of Plaintiff Holbrook were and are in violation of Plaintiff Holbrook's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

163. Interfering with and preventing Plaintiff Holbrook from engaging in lawful activities in a public place were and are in violation of Plaintiff Holbrook's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

164. As a direct and proximate result of the detention and physical restraint of Plaintiff Holbrook and interference with her ability to engage in lawful activities in public places, Plaintiff Holbrook suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff Holbrook suffered mental anguish as a result of the conduct that resulted in deprivation of her Constitutional rights.

## SEIZURE OF PLAINTIFF SMITH AND INTERFERENCE WITH HIS RIGHT TO BE IN PUBLIC PLACES FOR LAWFUL PURPOSES

## IN VIOLATION OF FOURTEENTH AMENDMENT
## BY OFFICER NERVIANI COGNIZABLE UNDER 42 U.S.C. § 1983

165.   Officer Nerviani and other St. Louis Metropolitan Police officers, acting individually or jointly and in concert and without a warrant or lawful authority and without any reasonable belief, suspicion, or probable cause, detained, physically restrained, and arrested Plaintiff Smith against his will and thereby caused a violation of Plaintiff Smith's rights under the Fourth and Fourteenth Amendments.

166.   Officer Nerviani, without a warrant or lawful authority and without any reasonable belief, suspicion, probable cause, or lawful excuse or justification, interfered with and prevented Plaintiff Smith from sitting and eating in Lucas Park and thereby caused a violation of Plaintiff Smith's substantive due process rights under the Fourteenth Amendment.

167.   The detention and continuing seizure of Plaintiff Smith were and are in violation of Plaintiff Smith's right to be free from unreasonable seizure of the person secured by the Fourth and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

168.   Interfering with and preventing Plaintiff Smith from sitting and eating in Lucas Park were and are in violation of Plaintiff Smith's right to move, stay put, and engage in lawful activities in public places secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

169.   As a direct and proximate result of the interference with Plaintiff Smith's ability to engage in lawful activities in public places, Plaintiff Smith suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiff suffered mental anguish as a result of the conduct that resulted in deprivation of his Constitutional rights.

43

## VI.    CLAIMS FOR RELIEF

### COUNT I

**POLICY AND/OR PRACTICE AND CUSTOM OF REMOVING HOMELESS PEOPLE FROM DOWNTOWN ST. LOUIS DIRECTED AGAINST THE ST. LOUIS BOARD OF POLICE COMMISSIONERS COGNIZABLE UNDER 42 U.S.C. § 1983**

For their causes of action against Defendants Freeman, Rollins, Saracino, Quinn, and Slay ("St. Louis Police Board") in Count I, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith state:

170.    Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith incorporate by reference each and every allegation and averment in paragraphs 1 through 169 of this Complaint as though fully set forth herein.

171.    There exist and have existed at all times relevant within the St. Louis Metropolitan Police Department and, on information and belief and with reasonable opportunity for further investigation and discovery, the City of St. Louis official policies or customs, practices and usages so pervasive that they constitute the policy of the Department and City which have caused and will continue to cause the constitutional deprivations suffered by the Plaintiffs as have been more fully set forth herein.

172.    The policies, customs, practices, and usages that exist and have existed are to remove homeless and other homeless-appearing people from downtown St. Louis and discourage them from remaining there by:

    a.    stopping, detaining, and arresting homeless and homeless-appearing

44

people in downtown St. Louis without probable cause, reasonable suspicion, or lawful excuse or justification;

b.    forcing homeless and homeless-appearing people to move on from public parks, sidewalks, and other public areas in downtown St. Louis without lawful excuse or justification and warning them that certain areas of downtown St. Louis are off-limits to them because of their homeless status;

c.    seizing and destroying the personal property of homeless and homeless-appearing people without probable cause, reasonable suspicion, or lawful excuse or justification;

d.    arresting and confining homeless and homeless-appearing people for up to and in excess of 20 hours without a warrant and without undertaking to obtain one;

e.    hindering and preventing, without lawful excuse or justification, homeless people from exercising the rights and engaging in the activities authorized by proper licenses and permits from the City of St. Louis;

f.    forcing homeless or homeless-appearing people to perform manual labor picking up trash in downtown St. Louis before they have been found or entered a plea of guilty;

g.    coercing homeless or homeless-appearing people into performing manual labor picking up trash in downtown St. Louis by the use or threat of physical restraint, confinement, or continued confinement

h.    ratifying misconduct of police officers by failing to correct or discipline officers who engage in misconduct.

173.    The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by stopping, detaining, and arresting them, by confining them in jail for any longer than needed to obtain a warrant, and by seizing and destroying their personal property, all without probable cause, reasonable suspicion, or lawful excuse or justification, violate Plaintiffs' rights to be free from unlawful seizure of their person and property under the Fourth and Fourteenth Amendments to

45

the United States Constitution.

174.    The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas without lawful excuse or justification and warning them that certain areas of downtown St. Louis are off-limits to them because of their homeless status violate Plaintiffs' rights to be, move, and stay put in public places for lawful purposes under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

175.    The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by forcing and coercing them to perform manual labor under threat of confinement before an adjudication of guilt violate Plaintiffs' rights to be free from involuntary servitude and punishment without a judicial determination of guilt under the Thirteenth and Fourteenth Amendments to the United States Constitution.

176.    The St. Louis Police Board is vested with the authority and has the duty to screen, train, supervise, discipline, and otherwise control the officers of the St. Louis Metropolitan Police Department.  The Board has effectively abrogated or delegated the power to so screen, train, supervise, discipline, and control the officers of the St. Louis Metropolitan Police Department working in downtown St. Louis by failing to act in the face of transgressions of which the Board knew or should have known.  As the lawfully designated policymaking body for the St. Louis Metropolitan Police Department, the Board has the power and responsibility to prevent the existence of the policies and practices described above and has failed and refused to

46

do so. The failure of the St. Louis Police Board to prevent constitutionally violative conduct as described above caused the constitutional deprivations that have been suffered by the Plaintiffs.

177.    The failure of the St. Louis Police Board, as the policymaker for the St. Louis Metropolitan Police department, to act affirmatively in the face of transgressions about which they knew or should have known establishes the policy of the St. Louis Metropolitan Police Department to engage in, condone, and  otherwise tolerate the constitutionally violative conduct alleged in this complaint. Had the Board acted affirmatively and properly to train and supervise officers of the St. Louis Metropolitan Police Department and to discipline the officers when the officers conducted themselves in constitutionally violative ways, the constitutional deprivations suffered by the Plaintiffs would not have occurred.

178.    The St. Louis Police Board is on notice, actual or constructive, of the practice of improperly detaining and arresting homeless and homeless-appearing people in downtown St. Louis, forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas and warning them that certain downtown areas are off-limits to them because of their homeless status, seizing and destroying the personal property of homeless and homeless-appearing people, taking homeless and homeless-appearing people out of their location and abandoning them, confining homeless and homeless-appearing people for up to and in excess of 20 hours without a warrant and without undertaking to obtain a warrant, preventing homeless people with proper licenses and permits from engaging in the authorized activities, and forcing homeless and homeless-appearing people to perform manual labor under threat of confinement and without seeing a judge because Plaintiffs' counsel notified Commissioner Slay and Chief of Police Mokwa of this practice. Nevertheless the St. Louis Police Board did nothing

47

to prevent or stop the practice.

179.   In their failures described above, the St. Louis Police Board intentionally disregarded known facts or alternatively was deliberately indifferent to a risk of the constitutional violations of which they knew or should have known and their culpability caused the constitutional violations suffered by the Plaintiffs.

180.   As a direct and proximate result of the policies, customs, practices, and usages of the St. Louis Police Board as described above, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered mental anguish as a result of the conduct that resulted in deprivation of their Constitutional rights.  Plaintiffs Tate, Henley, Jackson, and Kitchen suffered damages for the loss of their personal property.

181.   If Plaintiffs prevail, they are entitled to an award of their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri.

WHEREFORE, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith pray that this Court enter an order on Count I:

a.   Declaring that the above-described policies, practices, customs, and usage violate Plaintiffs' rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution;

48

b.      Preliminarily and permanently enjoin Defendants Freeman, Rollins, Saracino, Quinn, and Slay, their successors in office, and all those under their control or supervision or who are in active concert and participation with them from carrying out, implementing, maintaining, and enforcing the above-described policies, practices, customs, and usage;

c.      Awarding compensatory damages for each Plaintiff in an amount that is fair, just, and reasonable under the circumstances;

d.      Awarding Plaintiffs their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri;

e.      Awarding Plaintiffs the costs of this action and such other relief as the Court deems fair and appropriate under the circumstances.

## COUNT II

### SUPERVISORY LIABILITY BASED ON DIRECT PARTICIPATION IN OR DIRECTION OF ACTIVITIES VIOLATING CONSTITUTIONAL RIGHTS DIRECTED AGAINST DEFENDANT WARNECKE COGNIZABLE UNDER 42 U.S.C. § 1983

For their causes of action against Defendant Warnecke in Count II, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith state:

182.    Plaintiffs incorporate by reference each and every allegation and averment in paragraphs 1 through 181 of this Complaint as though fully set forth herein.

183.    Defendant Warnecke is the commander of the Fourth Police District of the St. Louis Metropolitan Police Department and is the highest ranking police officer in that district which encompasses downtown St. Louis.  She is delegated with the power and authority to direct

49

and control the conduct of the officers serving in the Fourth District by Defendant St. Louis Police Board and Chief of Police Mokwa, and Defendant Warnecke has directed and controlled the conduct of the officers serving in the Fourth District.

184.    Defendant Warnecke under color of law directly participated in or directed St. Louis Police officers, including but not limited to, on information and belief, saying that she had extra officers over the July 4th holiday weekend and "she put them to work," in improperly detaining and arresting homeless and homeless-appearing people in downtown St. Louis, forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas and warning them that certain downtown areas are off-limits to them because of their homeless status, seizing and destroying the personal property of homeless and homeless-appearing people; confining homeless and homeless-appearing people in jail for longer than needed to obtain a warrant, preventing homeless people with proper licenses and permits from engaging in the authorized activities, and forcing homeless and homeless-appearing people to perform manual labor under threat of confinement and without seeing a judge.

185.    In her actions described above, Defendant Warnecke intentionally disregarded known facts or alternatively was deliberately indifferent to a risk of the constitutional violations of which she knew or should have known, and her culpability caused the deprivation of Plaintiffs' rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution as described above.

186.    Defendant Warnecke under color of law directly participated in or directed the unlawful, deliberate, malicious, reckless, and wanton conduct of St. Louis Metropolitan Police officers described above.

187.    As a direct and proximate result of the policies, practices, acts, and failures to act of Defendant Warnecke, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered mental anguish as a result of the conduct that resulted in deprivation of their Constitutional rights.  Plaintiffs Tate, Henley, Jackson, and Kitchen suffered damages for the loss of their personal property.

188.    The acts and failures to act of Defendant Warnecke were intentional, wanton, malicious, oppressive, reckless and callously indifferent to the rights of the Plaintiffs, thus entitling them to an award of punitive damages against Defendant Warnecke in her individual capacity.

189.    If Plaintiffs prevail, they are entitled to an award of their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri.

WHEREFORE, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith pray that this Court enter an order on Count II:

a.    Declaring that the above-described policies, practices, customs, and usage violate Plaintiffs' rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution;

b.    Preliminarily and permanently enjoin Defendant Warnecke, her successors in

51

office, all those under her control or supervision or who are in active concert and participation with her, from carrying out, implementing, maintaining, and enforcing the above-described policies, practices, customs, and usage;

    c.     Award compensatory damages for each Plaintiff in an amount that is fair, just, and reasonable under the circumstances;

    d.     Award punitive damages against Defendant Warnecke in her individual capacity;

    e.     Award Plaintiffs their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri;

    f.     Award Plaintiffs the costs of this action and such other relief as the Court deems fair and appropriate under the circumstances.

## COUNT III

### POLICY AND/OR PRACTICE AND CUSTOM OF REMOVING HOMELESS PEOPLE FROM DOWNTOWN ST. LOUIS DIRECTED AGAINST THE CITY OF ST. LOUIS COGNIZABLE UNDER 42 U.S.C. § 1983

For their causes of action against Defendant City of St. Louis in Count III, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith state:

190.    Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith incorporate by reference each and every allegation and averment in paragraphs 1 through 189 of this Complaint as though fully set forth herein.

191.    There exist and have existed at all times relevant within the St. Louis

52

Metropolitan Police Department and, on information and belief and with reasonable opportunity for further investigation and discovery, the City of St. Louis official policies or customs, practices and usages so pervasive that they constitute the policy of the City and the Department which have caused and will continue to cause the constitutional deprivations suffered by the Plaintiffs as have been more fully set forth herein.

192.    The policies, customs, practices, and usages that exist and have existed are to remove homeless and other homeless-appearing people from downtown St. Louis and discourage them from remaining there by:

a.    stopping, detaining, and arresting homeless and homeless-appearing people in downtown St. Louis without probable cause, reasonable suspicion, or lawful excuse or justification;

b.    forcing homeless and homeless-appearing people to move on from public parks, sidewalks, and other public areas in downtown St. Louis without lawful excuse or justification and warning them that certain areas of downtown St. Louis are off-limits to them because of their homeless status;

c.    seizing and destroying the personal property of homeless and homeless-appearing people without probable cause, reasonable suspicion, or lawful excuse or justification;

d.    arresting and confining homeless and homeless-appearing people for up to and in excess of 20 hours without a warrant and without undertaking to obtain one;

e.    hindering and preventing, without lawful excuse or justification, homeless people with exercising the rights and engaging in the activities authorized by proper licenses and permits from the City of St. Louis;

f.    forcing homeless or homeless-appearing people to perform manual labor picking up trash in downtown St. Louis before they have been found or entered a plea of guilty;

g.    coercing homeless or homeless-appearing people into performing manual labor picking up trash in downtown St. Louis by the use or threat of

53

physical restraint, confinement, or continued confinement

193.     The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by stopping, detaining, and arresting them, by confining them in jail for longer than needed to obtain a warrant, and by seizing and destroying their personal property, all without probable cause, reasonable suspicion, or lawful excuse or justification, violate Plaintiffs' rights to be free from unlawful seizure of their person and property under the Fourth and Fourteenth Amendments to the United States Constitution.

194.     The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas without lawful excuse or justification and warning them that certain areas of downtown St. Louis are off-limits to them because of their homeless status violate Plaintiffs' rights to be, move, and stay put in public places for lawful purposes under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

195.     The policies, practices, customs, and usages of removing homeless and homeless-appearing people and discouraging them from remaining in downtown St. Louis by forcing and coercing them to perform manual labor under threat of confinement before an adjudication of guilt violate Plaintiffs' rights to be free from involuntary servitude and punishment without a judicial determination of guilt under the Thirteenth and Fourteenth Amendments to the United States Constitution.

196.     The City of St. Louis has the power and responsibility to prevent the existence of

54

the policies and practices described above and has failed and refused to do so. The failure of the City of St. Louis to prevent constitutionally violative conduct as described above caused the constitutional deprivations that have been suffered by the Plaintiffs.

197. The failure of the City of St. Louis to act affirmatively in the face of transgressions about which they knew or should have known establishes the policy of the City of St. Louis to engage in, condone, and otherwise tolerate the constitutionally violative conduct alleged in this complaint. Had the City acted affirmatively and properly to prevent the existence of the policies and practices described above, the constitutional deprivations suffered by the Plaintiffs would not have occurred.

198. The City of St. Louis is on notice, actual or constructive, of the practice of improperly detaining and arresting homeless and homeless-appearing people in downtown St. Louis, forcing homeless and homeless-appearing people to remove themselves from public parks and other public areas and warning them that certain downtown areas are off-limits to them because of their homeless status, seizing and destroying the personal property of homeless and homeless-appearing people, taking homeless and homeless-appearing people out of their location and abandoning them, confining homeless and homeless-appearing people in jail for longer than needed to obtain a warrant, preventing homeless people with proper licenses and permits from engaging in the authorized activities, and forcing homeless and homeless-appearing people to perform manual labor under threat of confinement and without seeing a judge because Plaintiffs' counsel notified Mayor and Police Commissioner Slay, the City Counselor, and Chief of Police Mokwa of this practice. Nevertheless the City of St. Louis did nothing to prevent or stop the practice.

199.    In their failures described above, the City of St. Louis intentionally disregarded known facts or alternatively was deliberately indifferent to a risk of the constitutional violations of which they knew or should have known and their culpability caused the constitutional violations suffered by the Plaintiffs.

200.    As a direct and proximate result of the policies, customs, practices, and usages of the City of St. Louis as described above, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered intimidation, humiliation, embarrassment, and emotional distress, and Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith suffered mental anguish as a result of the conduct that resulted in deprivation of their Constitutional rights.  Plaintiffs Tate, Henley, Jackson, and Kitchen suffered damages for the loss of their personal property.

201.    If Plaintiffs prevail, they are entitled to an award of their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri.

WHEREFORE, Plaintiffs Johnson, Tate, Brinkman, Edwards, Jackson, White, Harris, Trawick, Coleman, Henley, Kitchen, Holbrook, and Smith pray that this Court enter an order on Count III:

a.      Declaring that the above-described policies, practices, customs, and usage violate Plaintiffs' rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution;

b.      Preliminarily and permanently enjoin the City of St. Louis, its agents, employees,

56

officials, their successors in office, and all those under their control or supervision or who are in active concert and participation with them from carrying out, implementing, maintaining, and enforcing the above-described policies, practices, customs, and usage;

    c.    Awarding compensatory damages for each Plaintiff in an amount that is fair, just, and reasonable under the circumstances;

    d.    Awarding Plaintiffs their reasonable attorneys' fees and costs for the time of the St. Louis University Legal Clinic, the Washington University School of Law Civil Justice Clinic, and the American Civil Liberties Union of Eastern Missouri;

    e.    Awarding Plaintiffs the costs of this action and such other relief as the Court deems fair and appropriate under the circumstances.

Respectfully submitted,

LEGAL SERVICES OF EASTERN MISSOURI, INC.

Ann B. Lever    ED# 3675
Daniel K. Glazier    ED# 14469
4232 Forest Park Avenue
St. Louis, Missouri 63108
(314) 534-4200 telephone
(314) 534-1028 facsimile

ST. LOUIS UNIVERSITY LEGAL CLINIC

John J. Ammann    ED# 57720
Susan McGraugh
321 N. Spring Avenue
St. Louis, Missouri 63108
(314) 977-2778 telephone

57

(314) 977-3334  facsimile


WASHINGTON UNIVERSITY SCHOOL OF LAW
CIVIL JUSTICE CLINIC

Jane H. Aiken *
Steve J. Gunn *
Catherine E. Johnson *          *Applications for Admission Pro
One Brookings Drive             Hac Vice Pending with Court
Campus Box 1120
St. Louis, Missouri 63130-4899
(314) 935-7238  telephone
(314) 935-5171  facsimile

AMERICAN CIVIL LIBERTIES UNION OF EASTERN
MISSOURI

Stephen M. Ryals  ED# 10602
The Ryals Law Firm
8008 Carondelet, Suite 205
St. Louis, Missouri 63105
(314) 862-6262  telephone
(314) 862-8845  facsimile

Denise D. Lieberman  ED# 47013
American Civil Liberties Union of Eastern Missouri
4557 Laclede Avenue
St. Louis, Missouri 63108
(314) 361-2111  telephone
(314) 361-3135  facsimile